**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ERIC R. BAKER, #477470,

      Petitioner,

                                                              Civil No: 07-CV-11065
                                                              Honorable Marianne O. Battani
                                                              Magistrate Judge Donald A. Scheer

v.

MILLICENT WARREN,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, DENYING CERTIFICATE OF APPEALABILITY AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      Petitioner, Eric Baker, is a state inmate currently incarcerated at Cooper Street Correctional Facility in Jackson, Michigan. Petitioner was convicted of two counts of first-degree criminal sexual conduct, Mich. Comp. Laws §750.520b(1)(a) and one count of second-degree criminal sexual conduct, Mich Comp Laws §750.520c(1)(a). He was sentenced to serve concurrent terms of eleven to twenty years' imprisonment for each first degree criminal sexual conduct conviction and three to fifteen years imprisonment for the second-degree criminal sexual conduct conviction.

      Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

# I. BACKGROUND

The state appellate court in this case set forth underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*. 41 Fed. App'x. 730 (6th Cir. 2002), as follows:

> "The complainant was ten years old at the time of trial. She lived with her mother and defendant, her stepfather, at the time of the alleged sexual assaults. She first told three of her friends at school, also girls, about defendant sexually abusing her. All three girls recalled that the complainant told them suddenly after she started to cry, and one girl testified that the complainant told the girls about defendant after another friend mentioned a friend whose father sexually assaulted her. The complainant's friends told the school counselor about the assaults, and she eventually told the counselor herself. The complainant testified that defendant had sexually abused her multiple times after she returned home from school and told her not to tell anyone else because it was a secret.
>
> The complainant's mother testified that defendant would have been alone with the complainant and the complainant's sister for up to an hour after they returned home from school. She also testified that the complainant's glasses went missing the day before the complainant disclosed the alleged abuse. She and defendant could not afford new glasses, so defendant required the complainant to choose between attending soccer and getting new glasses. The complainant testified that defendant hurt her emotionally when he forced her to choose between soccer and glasses, but she said that it did not cause her to disclose what had happened. The complainant's mother also testified that the complainant was aggressive and sometimes had problems with lying.
>
> Gina Gough, a protective services employee, interviewed the complainant. Gough testified that the complainant became tearful and indicated that defendant had touched her under her underwear and "put his thing in her mouth." Gough and Detective Timothy Fandel then drove to defendant's house, where they informed defendant and the complainant's mother of the allegations. Defendant denied the allegations, and the complainant's mother did not believe them. Gough concluded that the children were not safe and arranged to place them with the complainant's grandparents. On cross-examination by defendant, Gough admitted that she had been deceived by children in the past. On redirect examination, she indicated that she did not believe she had been deceived n this case.
>
> Dr. Stephen Guertin, a physician member of the child safety program at Sparrow Hospital, physically examined and interviewed the complainant. On

that basis, he concluded that defendant had had intercrural intercourse with complainant, which is placing the penis between another's leg's and down along the vaginal area. He found no signs of physical injury and that the complainant had a normal hymen, which would be normal if there had not been vaginal intercourse. He found evidence of labial fusion, but he explained that he saw that often in children who had not been molested. Dr. Vernon Westervelt, a child psychologist who testified for the defense, examined the complainant and diagnosed her with attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). However, Dr. David Fugate, a child psychologist who testified for the prosecution, stated that he did not believe complainant had either disorder."

*People v. Baker,* No. 257440, 2005 WL 3334602, *1, (Mich. Ct. App. Dec. 8, 2005) (per curiam).

Petitioner filed an appeal of right and raised the following claims:

"I. Defense trial counsel was constitutionally ineffective in failing to object to a child protective services worker testifying that the worker did not believe the complainant was safe and initiated removal of the complainant from appellant's residence after investigating the criminal sexual conduct allegations, thereby giving improper opinion testimony as to appellant's guilt.

II. The trial court violated appellant's due process rights by refusing to grant a mistrial where the prosecutor elicited testimony that the complainant had also reported that appellant allegedly assaulted the complainant's two siblings, which amounted to irrelevant and unfairly prejudicial other acts evidence.

III. The trial court violated appellant's due process rights at sentencing by scoring offense variables and increasing the statutory sentencing guideline range based on alleged facts which the prosecutor did not charge and prove beyond a reasonable doubt at a trial or have appellant admit at a plea."

The Michigan Court of Appeals affirmed Petitioner's conviction. *Id.*

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims argued before the Michigan Court of Appeals. Relief was also denied. *People v. Baker,* 475 Mich. 885; 715 NW2d 881 (2006)(table).

Petitioner now brings this petition for writ of habeas corpus and raises the same

3

three claims presented before the Michigan Court of Appeals and the Michigan Supreme Court.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law is objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner argues that his defense attorney rendered ineffective assistance of counsel when he failed to object to Gina Gough's testimony that she felt the children were not safe and that she did not believe the complainant had deceived her. Petitioner argues that Ms. Gough's statements were in effect opinion testimony as to the ultimate issue in the case (i.e., Petitioner's guilt). Gina Gough was a protective services worker who interviewed the ten year old complainant following the agency's notice of sexual abuse allegations involving the complainant and Petitioner. the Michigan Court of Appeals rejected Petitioner's argument as follows:

> "Defendant did not move for a new trial or for an evidentiary hearing in the trial court. Therefore, a review of his claim is limited to errors apparent on the record. An expert in a childhood sexual abuse case may not testify that the charged sexual abuse occurred or vouch for a complainant's veracity. Even if Gough had actually been offered as an expert, we do not believe that any inappropriateness in her testimony or failure to object thereto prejudiced defendant to the point of depriving him of a fair trial.
>
> Gough's statement about he children's safety was an explanation for why she took a certain step in the investigation rather than a comment on defendant's guilt, and it was in response to a proper, open-ended question. Her statement that she did not believe she had been deceived took place after defendant's attorney elicited testimony that there was no physical evidence of or eyewitnesses to the assaults, that Gough had no personal knowledge of the events, that some children lie, and that she had been fooled before. She also testified that children who lie tend not to provide specific

5

> information, and her judgments involved interviews with everyone involved and sometimes other investigative tools. The jury had the opportunity to observe the complainant to determine her credibility firsthand. Most significantly, none of the statements to which defendant now objects told the jury anything they did not already know: implicit in Gough's testimony was the conclusion that she had not been fooled. Sound trial strategy could include "leaving well enough alone" after having already established that Gough had little supporting evidence and had, by her own admission been wrong in the past."

*Baker,* No. 257440, 2005 WL 3334602, *2 (internal citations omitted). The Court agrees.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

The Court finds that Ms. Gough's testimony did not constitute an opinion about Petitioner's guilt. Rather, it served as an explanation regarding her investigation into the sexual abuse allegations, and why she took the action she did in her attempts to bring this matter to a conclusion.

In any event, there is generally no prohibition on a witness offering opinion testimony which goes to an ultimate issue in the case. Both the Michigan and Federal Rules of Evidence permit such testimony. Fed. R. Evid. 704(a); Mich. R. Evid. 704. At a minimum, there is no clearly established federal law as determined by the Supreme Court which suggests that the admission of such evidence violates the Constitution, see *Hopp v. Burt,* No. 03-10153, 2007 WL 162248, at *9 (E.D. Mich. Jan. 16, 2007), as required for relief under §2254(d)(1). The Michigan Court of Appeals held that the admission of Ms. Gough's testimony was not an improper personal opinion of guilt, but rather relevant evidence necessary to explain why she took a certain step in her investigation. The Court finds that the state court's resolution of this claim was not contrary to or an unreasonable application of federal law. Habeas relief is, therefore, denied as to this claim.

## B. Prosecutorial Misconduct
### (Procedural Default)

Petitioner argues that the prosecutor improperly questioned a defense expert witness, Dr. Vernon Westervelt, which elicited "other acts evidence" and was prejudicial to the defense. Petitioner, therefore, asserts that the trial court erred in not granting defense counsel's request for a mistrial. The Michigan Court of Appeals disagreed and stated as follows:

> "Defense counsel objected to the prosecution's questions and moved for a mistrial, but only after the questions had been answered, so the issue is unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. Thus, defendant must show that the plain error caused prejudice, that he was actually innocent, or that the "error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."
>
> The trial court ruled before trial that defendant's prior conviction for domestic violence involving the complainant was inadmissible unless defendant opened the door. The trial court also refused to allow the prosecution to rebut the complainant's mother's testimony with incidents of domestic violence involving defendant. During cross-examination of Dr. Westervelt, the prosecutor elicited testimony that the complainant had told hin about instances of domestic violence at home. However, Dr. Westervelt also clarified that there is no correlation between physical and sexual abuse. Defendant's conviction for domestic violence was not mentioned anywhere in the presence of the jury. Dr. Westervelt indicated that the complaint had oppositional defiant disorder, which often results in children being manipulative and deceptive, and that the complainant had a tendency play adults against each other. Both defendant and the prosecution mentioned the domestic violence briefly during their closing arguments to the jury.
> We perceive no prejudice. Dr. Westervelt indicated that "what's gong on in the family" was essential to know because "children do not exist in a vacuum." The jury was informed that the physical abuse had no bearing on defendant's charged offenses, and that trial court cautioned the jury that the basis for an expert's opinion was admissible but not necessarily true. Finally, Dr. Westervelt's characterization of the complainant as deceitful and manipulative supports the trial court's cautionary instruction. Under the circumstances, any error in Dr. Westervelt's testimony about domestic violence did not affect defendant's substantial rights."

8

*Baker,* No. 257440, 2005 WL 3334602, *3 (internal citations omitted). The Court agrees.

As an initial matter, Respondent argues that this issue is procedurally defaulted because it was not preserved at trial, and therefore, should be dismissed. The Supreme Court has described the doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

In this case, it is more efficient to proceed directly to the merits of the Petitioner's claims.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form

9

the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit identified four factors to consider when analyzing conduct for flagranc*y*: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

This Court finds no merit in Petitioner's "other acts" claim because:

"[t]here is no clearly established Supreme Court precedent which holds that

> a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms."

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because the Supreme Court has not held that the use of propensity or "other acts" evidence violates the Constitution, the state appellate court's conclusion that the evidence was admissible did not result in a decision that was "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). Petitioner's disagreement with the state court's ruling that the disputed evidence was admissible "is not cognizable on federal habeas review inasmuch as it involves no constitutional dimension." *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008); see also, *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

Petitioner argues that the prosecutor engaged in misconduct by eliciting testimony about Petitioner's prior instances of domestic violence. However, he fails to show that he was prejudiced by the introduction of this evidence since the jury was free to decide what weight to attribute to this testimony. During Dr. Westervelt's testimony, he clarified that physical abuse (i.e., domestic violence) does not correlate with sexual abuse, which is the offense at issue in this case. Also, the fact that Petitioner was convicted for domestic violence was not a fact revealed to the jury. The trial court stated in its ruling denying defense counsel's motion for a mistrial, in part:

> "My review of the record indicates that Miss Freeman [the prosecutor] did ask a question about physical abuse, and appears to have been based upon the report that the - the report of psychological evaluation that Doctor Westervelt prepared . . .

11

* * *

> . . . [S]ince it was a part of the report, it was something that the - contained in the - Doctor Westervelt's report, Miss Freeman certainly has the ability to interrogate him about what is in the report. Because something is in the report to indicate the child told him does not indicate necessarily that that information was true, only that that was information he had, which was the whole basis upon which – the facts upon which an opinion is made or in evidence, not because they're true, but because they were utilized to make a – an opinion.
>
> . . . I find that it was not precluded by the Court's previous ruling. It was relevant. So it's not – the probative value certainly outweighs the prejudicial effect because it was part of the doctor's report, it was not direct evidence of abuse. So the court is going to deny the motion."

Tr. Vol. III, pp. 168-69. Finally, the trial court gave the jury a cautionary instruction immediately following the denial of defense counsel's motion for a mistrial as follows:

> "Ladies and gentlemen, throughout his testimony of the expert witness, experts are allowed to give opinions, and their underlying facts or data upon which they base their opinions are also admissible. But because they're admissible for purposes of asking questions or for him to discuss does not necessarily mean that that information is true. And you must consider that only if there is - you're not necessarily to assume that those – that information is true."

*Id* at 170-71. During defense counsel's closing argument, he repeated the trial court's instruction from earlier in the trial:

> "There have been allegations of other physical abuse of Kristien, her brother and her sister. The Judge told you right after that just because these are admissible it doesn't automatically mean they're true you have to judge for yourself."

Tr. Vol. IV, pg. 111.

Petitioner has not shown that the prosecutor's introduction of "other acts" evidence of physical abuse violated his constitutional rights. He has not shown that the state court's ruling was contrary to, or an unreasonable application of, Supreme Court precedent, 28

12

U.S.C. § 2254(d), and the claim does not warrant habeas relief.

## C. Sentencing

Finally, Petitioner argues that he is entitled to re-sentencing pursuant to *Blakely v. Washington,* 542 U.S. 296 (2004). The Michigan Court of Appeals rejected Petitioner's argument ruling as follows: ". . . *Blakely* does not apply to Michigan's indeterminate sentencing guidelines. We therefore reject defendant's sentencing challenge." *Baker,* No. 257440, 2005 WL 3334602, *3 (internal citations omitted).

Specifically, Petitioner claims that his offense variables (i.e., OV- 4[1], OV-10[2] & OV-13[3]) were not scored in accordance with *Blakely*, thereby causing his sentencing guideline range to exceed the proper limits.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

---

[1] If the victim suffered serious "psychological injury requiring professional treatment," 10 points will be assessed. M.C.L. §777.34(a). If the victim suffered no "serious psychological injury requiring professional treatment," then no points will be "assigned. M.C.L. §777.34(b). The fact "that treatment has not been sought is not conclusive." M.C.L. §777.34(2).

[2] Petitioner was scored 15 points for engaging in predatory pursuant to Mich. Comp. Laws §777.40(3)(a). He argues that he should have been scored 10 points under Mich. Comp. Laws §777.40(1)(b) (i.e., "offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status.").

[3] Petitioner was scored 50 points under Mich. Comp. Laws §777.43(1)(a) because the trial court found that Petitioner's "offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or person less than 13 years old." Petitioner argues he should have been scored 25 points under Mich. Comp Laws §777.43(1)(b).

13

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Michigan has an indeterminate sentencing system for most crimes, including that which Petitioner was convicted. The maximum term of imprisonment is set by law. *People v. Drohan*, 715 N.W.2d 778, 789-90 (Mich. 2006).

The Supreme "Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 863-64, 166 L.Ed.2d 856 (2007). In other words, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Id.* at 860.

In support of Petitioner's request for habeas relief, he relies upon the case of *Blakely* in which the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301, citing *Apprendi,* 530 U.S. at 490.

The problem with Petitioner's reliance on *Blakely* is that *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. See *People v. Drohan,* 475 Mich. 140, 160-61 (2006); cert. den. sub nom *Drohan v. Michigan,*__ U.S. __, 127 S.Ct. 592 (2006);

*People v. Claypool,* 470 Mich. 715, 730, n.14; 684 N.W.2d 278 (2004) (both citing, MCL Mich. Comp. Laws §769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely,* create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. See *People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W.2d 231 (2003), citing Mich. Comp. Laws §769.34(2). Under Michigan law, the trial judge sets the minimum sentence, and can never exceed the maximum sentence. *Claypool,* 470 Mich. at 730., n. 14. Michigan's indeterminate sentencing scheme is unaffected by the *Blakely* holding. *Drohan*, 475 Mich. at 164.

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. The trial court did not exceed the maximum penalty for first-degree criminal sexual conduct, which is life imprisonment "or any term of years, but not less than 25 years."Mich. Comp. Laws §750.520b(2)(b). The maximum penalty for second-degree criminal sexual conduct is fifteen years. Mich. Comp. Laws §750.520c(2)(b).

Since Petitioner was sentenced to serve concurrent terms of eleven to twenty years' imprisonment for each first-degree criminal sexual conduct conviction and three to fifteen years' imprisonment for the second-degree criminal sexual conduct conviction, his sentence is within the statutory maximum, and the sentencing scheme did not run afoul of the Sixth Amendment, so as to entitle him to habeas relief. See *Chontos v. Berghuis,* 585 F.3d 1000, 1002 (6th Cir. 2009) (the Sixth Amendment rule in *Apprendi* does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not

exceed the applicable statutory maximum); *Stephenson v. Renico,* 280 F.Supp.2d 661, 669 (E.D. Mich. 2003).

## D. Certificate of Appealability & *In Forma Pauperis*

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[4] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

Finally, although the Court has denied a certificate of appealability in this case, the Court will grant leave to proceed on appeal *in forma pauperis.* *See* Fed. R. App. P. 24(a).

---

[4]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

## IV.  CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue a certificate of appealability.

IT IS FURTHER ORDERED that any application for leave to appeal *in forma pauperis* is GRANTED.

                                                    s/Marianne O. Battani
                                                    HONORABLE MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT COURT

Dated: March 29, 2010

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the Petitioner and counsel of record on this date, March 29, 2010, by electronic and/or ordinary mail.

                                                    s/Bernadette M. Thebolt
                                                    Bernadette Thebolt
                                                    Case Manager